## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| JANE DOE,<br><br>     Plaintiff,<br><br>vs.<br><br>JEFFREY WAS,<br><br>     Defendant. | Civil Case No. 2:24-cv-05916<br><br>**(Filed electronically)**<br><br><br><br>**Oral Argument Requested** |

**BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS I AND II OF THE COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6) ON BEHALF OF DEFENDANT, JEFFREY T. WAS**

> **SHAPIRO, CROLAND, REISER,**
>  **APFEL & DI IORIO, LLP**
> Continental Plaza II
> 411 Hackensack Avenue
> Hackensack, New Jersey 07601
> Tel: (201) 488-3900
> Fax: (201) 488-9481
> *Attorneys for Defendant,*
> *Jeffrey T. Was*

On the brief:

Stuart Reiser, Esq.
Valerie A. Vladyka, Esq.

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ........................................................... 2

PROCEDURAL HISTORY AND FACTUAL BACKGROUND……………... 3

LEGAL ARGUMENT……………………………………………………….. 6

  I.  COUNTS I AND II OF THE COMPLAINT SHOULD BE
      DISMISSED FOR FAILURE TO STATE A CLAIM
      PURSUANT TO FED. R. CIV. P.  12(b)(6)…………………………... 6

    A. Plaintiff's Complaint Fails to Allege that Defendant Enticed, Recruited,
       Harbored, Transported, Provided, Obtained, Advertised, Maintained,
       Patronized or Solicited Plaintiff……………………………………….. 9

    B. Plaintiff's Complaint fails to Set Forth any Facts to Support the
       Allegation that Defendant Knew that he Would Use Fraud
       or Force To Engage in Sexual Acts…………………………………… 12

    C.  The Allegations Do Not Fall Within the Purview of a
        Commercial Sex Act.…………………………………………………… 13

    D.  The Commercial Sex Act Element of the TVPA Is Not Satisfied as
        Defendant Did Not Pay for the Travel Costs for The Trip To Aruba …. 15

 II.  THE COURT SHOULD DECLINE TO RETAIN  JURISDICTION
     OVER THE STATE OF CLAIMS SET FORTH IN COUNTS III, IV
     AND V OF THE COMPLAINT……………………………………….. 17

CONCLUSION ……………………………………………………………. 19

i

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page**

Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 988 F.2d 1157
    (Fed. Cir. 1993)…………………………………………………………………6

Ardolf v. Weber, 332 F.R.D. 467 (S.D.N.Y. 2019)………………………………… 11

Ashcroft v. Iqbal, 556 U.S. 662, 1299 S.Ct. 1937 (2009)……………………6, 7, 8, 10

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955 (2007)………..7, 8, 10

Canosa v. Ziff, 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019)…………....11

Eckhart v. Fox News Network, LLC, 2021 U.S. Dist. LEXIS 171219
    (Sept. 9, 2021)...……………………………………………………….......12

Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009)……………………………7

Geiss v. Weinstein, 383 F.Supp.3d 156 (S.D.N.Y. 2019)……………………………11

Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187 (3d Cir. 2009)……………..8

Hubbard v. Blue Cross & Blue Shield Ass'n, 42 F.3d 942 (5th Cir.), cert. denied
    515 U.S. 1122, 115 S.Ct. 2276 (1975)………………………………………17

Huett v. Weinstein Co, LLC., 2018 U.S. Dist. LEXIS 223736
    (C.D.Cal Nov. 5, 2018)…………………………………………………………11

Lawson v. Rubin, 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. April 29, 2018)…..……12

Livingston v. Shore Slurry Seal, Inc., 98 F.Supp.2d 594 (D.N.J. 2000)……………...6

Malleus v. George, 641 F.3d 560 (3d Cir. 2011)……………………………...…6

Marcano v. Lombardi, 2005 U.S. Dist. LEXIS 35548 (D.N.J. Dec. 20, 2005…………3

<u>Montero v. AGCO Corp.</u>, 19 <u>F. Supp.</u> 2d 1143 (E.D. Cal 1998)……………………18

<u>Morse v. Lower Merion School District</u>, 132 <u>F</u>.3d 902 (3d Cir. 1997)……………7

<u>Noble v. Weinstein</u>, 335 <u>F.Supp.</u> 3d 504 (S.D.N.Y 2018).  …………………10,11, 12

<u>Roberts v. eXp Realty, LLC</u>, 2024 <u>U.S. Dist. LEXIS</u> 93537
 (C.D.Cal. May 23, 2024)……………………………………………….……..12

<u>United States v. Flanders</u>, 752 <u>F</u>.3d 1317 (11th Cir. 2014)…………………………11

<u>United States v. Garcia-Gonzalez</u>, 714 <u>F</u>.3d 306 (5th Cir. 2013) ……………..………8

<u>United States v. Todd</u>, 627 <u>F</u>.3d 329 (9th Cir. 2010)……………………........12, 13

**Statutes**

 **Federal**

18 <u>U.S.C.</u> § 1591.………………………………………………………  3, 9

18 <u>U.S.C.</u> § 1591(e)(3)…………………………………………………….8, 14

18 <u>U.S.C.</u> § 1595.…………………………………………….……… 3, 5, 16, 17

18 U.S.C.A § 1595(a)……………………………………………...  5, 6, 8, 9

28 <u>U.S.C.</u> § 1367(c)(3)………………………………………………….2, 17

 **State**

*N.J.S.A.* 2C:13-8.1………………………………………….……....3, 5, 8,16

**Rules**

Fed R. Civ. P.
8(a)(2)…………………………………………………………………..…..6

Fed. R. Civ. P. 10(a)…………………………………………………………..….. 3

Fed. R. Civ. P. 12(b)(6)……………………………………………2, 6, 8, 16, 19

Fed. R. Civ. P.12(d)………………………………………………..…....4

Fed. R. Civ. P. 56………………………………………..………………….…..4

## Other

<u>Pub. L. No</u>. 106-386, §102…………………………………………………14

## PRELIMINARY STATEMENT

The entire predicate for this Court's jurisdiction over this matter is based upon Plaintiff's allegation of a violation of the Trafficking Victims Protection Act, 18 U.S.C. §1595.  However, as demonstrated below, Plaintiff's Complaint fails to set forth sufficient facts to establish a *prima facie* claim under 18 U.S.C. §1595 warranting dismissal of the claim under Fed. R. Civ. P. 12(b)(6).  Plaintiff's remaining state court causes of action (assault, battery and intentional infliction of emotional distress) should be dismissed under 28 U.S.C. § 1367(c)(3) for adjudication in New Jersey state court.

## <u>PROCEDURAL HISTORY AND FACTUAL BACKGROUND</u>

Plaintiff, Jane Doe[1] ("Plaintiff"), commenced this action by way of Complaint filed on May 8, 2024 in the United States District Court for the District of New Jersey.  See copy of Complaint attached as **Exhibit 1** to the Declaration of Valerie A. Vladyka.  The **<u>sole basis</u>** for this Court's subject matter jurisdiction is Plaintiff's claim of a violation of the Trafficking Victims Protection Act ("TVPA"), 18 <u>U.S.C.</u> §1595 (Count I).  The other ancillary claims asserted in the Complaint involve state and/or common law causes of action: violation of New Jersey's Human Trafficking law, <u>N.J.S.A.</u> 2C:13-8.1, assault, battery and intentional infliction of emotional distress.  The Complaint seeks compensatory damages including bodily injury, mental and emotional distress, punitive damages, statutory damages, and attorneys' fees and costs.

In her Complaint, Plaintiff acknowledges that she and defendant, Jeffrey Was ("Defendant" or "Was"), were in a romantic relationship beginning in early 2021[2] through May 2023.  See ¶12 and ¶13 of the Complaint. Plaintiff alleges that beginning in or around December 2021, Was "began speaking to Plaintiff in

---

[1] Plaintiff seeks to shield her identity by filing the Complaint under the pseudonym "Jane Doe" without seeking the approval of this Court.  Fed. R. Civ. P. 10(a) (requires plaintiff to identify the parties by their real names in the complaint); <u>Marcano v. Lombardi</u>, 2005 <u>U.S. Dist. LEXIS</u> 35548 (D.N.J. Dec. 20, 2005).

[2] ¶12 of the Complaint alleges that the romantic relationship began in July 2021 while ¶13 alleges that the relationship began in January 2021.

a hostile and verbally abusive manner". See ¶ 14 of the Complaint. The Complaint goes on to allege similar conduct and purported abusive physical conduct on several occasions during the first six months of 2022. See ¶17 - ¶30 of the Complaint.

Of critical importance to the TVPA claim, Plaintiff alleges that she was planning a trip to Aruba in around early August 2022. See ¶ 31 of the Complaint. Plaintiff's family own and/or owned the property in Aruba. See ¶7 of the Certification of Jeffrey Was (hereinafter referred to as "Was Cert".)[3] Plaintiff goes on to allege that Was proposed the idea to travel with her and offered and paid for a majority, if not the entirety, of Plaintiff's travel expenses for the trip. See ¶ 32 and ¶ 33 of the Complaint. In fact, however, it was Plaintiff who made the actual travel arrangements and purchased the airline tickets for herself, Defendant and Plaintiff's minor son, who accompanied them on the trip. See ¶4 of Was Cert. and **Exhibit A** attached thereto. Despite admitting that she had a romantic relationship with Was, Plaintiff further alleges "[u]pon information and belief", that it was Defendant who "convinced" her to allow him to travel with her in order to engage in sexual relations with her. See ¶ 34 of the Complaint. While in Aruba, Plaintiff alleges that an incident occurred in which Was forced

---

[3] Pursuant to Fed. R. Civ. P. 12(d), the court may consider materials outside of the pleadings, such as the Declaration of Jeffrey Was and thereby convert this motion to a motion for summary judgment under Fed. R. Civ. P. 56.

her to have sexual intercourse with him against her will.  See ¶ 36 thru ¶45 of the

Complaint.

Count I of the Complaint asserts the following specific allegations in support

of a TVPA claim:

102. Plaintiff brings this claim pursuant to all applicable sections of 18 U.S.C.A. § 1595 in that 'An individual who is a victim of a violation of Section 1589, 1590, or 1591 of title 18, United States Code, may bring a civil action in any appropriate district court of the United States.  The court may award actual damages, punitive damages, reasonable attorneys' fees, and other litigation costs reasonably incurred.' 18 U.S.C.A. § 1595(a).

103.  Defendant and Plaintiff traveled [sic] to Aruba from New Jersey.

104. Defendant paid for Plaintiff's trip to Aruba knowing that he would use fraud, physical force and/or coercion in order to engage in sexual acts with Plaintiff.[4]

105. Plaintiff did not wish to engage in sexual acts with Defendant.

106.  Plaintiff benefitted financially commercially.

107. As a direct and proximate result of these malicious and conscious wrongful actions, Plaintiff has sustained humiliation as well as severe mental and emotional distress from the indignity to which she was subjected, which resulted in bodily injury, and damages, pursuant to 18 U.S.C.A. §§ 1595, to be determined at trial.

Count II of Plaintiff's Complaint asserts a claim under the New Jersey

Human Trafficking statute, N.J.S.A. 2C:13-8.1.  The allegations set forth in

---

[4] As previously indicated, ¶34 of the Material Facts section of the Complaint alleges that "[u]pon information and belief, Defendant convinced Plaintiff to allow him to trave to Aruba with her in order to engage in sexual relations with Plaintiff.

Paragraphs 108 thru 1103 are identical to those quoted above except for quoting the New Jersey Statute instead of <u>U.S.C.</u> § 1595(a).

## LEGAL ARGUMENT

### POINT I

### COUNTS I AND II OF THE COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM PURSUANT TO FED. R. CIV. P. 12(b)(6)

Under the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed R. Civ. P. 8(a)(2). A motion under Federal Rule of Civil Procedure 12(b)(6) - which empowers the federal courts to dismiss a complaint "for failure to state a claim upon which relief can be granted" - tests the legal sufficiency of a complaint. Fed. R. Civ. P. 12(b)(6); <u>Livingston v. Shore Slurry Seal, Inc.</u>, 98 <u>F.Supp</u>.2d 594, 596 (D.N.J. 2000). Federal Rule 12(b)(6) is designed "to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare the litigants the burdens of unnecessary pre-trial and trial activity." <u>Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.</u>, 988 <u>F</u>.2d 1157, 1160 (Fed. Cir. 1993).

In deciding a motion under Fed Rule 12(b)(6), the district court conducts a three-part analysis. See <u>Malleus v. George</u>, 641 <u>F</u>.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" <u>Id.</u> (quoting <u>Ashcroft v. Iqbal</u>

, 556 U.S. 662, 675, 1299 S.Ct. 1937, 1947 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff.  Fowler v. UPMC Shadyside, 578 F.3d 203, 210-211 (3d Cir. 2009).  However, the court may disregard any conclusory legal allegations.  Id. "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007).  The Supreme Court in Twombly added that "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id.  Legal conclusions may be used to provide structure for the complaint, but the pleading's factual content must independently "permit the court to infer more than the mere possibility of misconduct."  Iqbal. Thus, a complaint's "bald assertions" or "legal conclusions" do not need to be credited when deciding a motion to dismiss.  Morse v. Lower Merion School District, 132 F.3d 902, 906 (3d Cir. 1997).

Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" Fowler, supra (578 F.3d at 211 (quoting Iqbal, supra (556 U.S. at 679)). If the complaint does not demonstrate more than a "mere possibility of misconduct," the complaint must be dismissed.

See Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009) (quoting Iqbal, supra (556 U.S. at 679).

In the instant matter, Plaintiff's Complaint fails to plead sufficient facts to establish a *prima facie* claim under the TVPA and, as such, Count I, the exclusive basis for this Court's jurisdiction, must be dismissed.[5] As discussed below, Plaintiff's allegations are conclusory and nothing more than a bare recitation of the elements of liability under the TVPA which are insufficient under Twombly, supra (550 U.S. at 556).

The TVPA imposes criminal liability on "'[w]hoever knowingly... in or affecting interstate or foreign commerce... recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person... knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion... or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act...'"  United States v. Garcia-Gonzalez, 714 F.3d 306, 310 (5th Cir. 2013) (quoting 18 U.S.C. § 1591(a))  The statute defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person."  18 U.S.C. § 1591(e)(3).

---

[5] Count II of the Complaint asserts a state claim for human trafficking claim against Defendant under N.J.S.A. 2C:13-8.1 which is the state counterpart to 18 U.S.C. § 1595(a).  Thus, all arguments in support of Defendant's motion to dismiss Count I apply equally to Count II.

The TVPA creates a private right of action for a person who is the victim of sex trafficking under the Act.  The statute provides as follows:

> A victim . . . may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorney fees.  [18 U.S.C. 1595(a)]

Thus, in order to establish a sex trafficking claim under 18 U.S.C. § 1591, Plaintiff must establish that Defendant (1) knowingly; (2) in interstate or foreign commerce; (3) recruited, enticed, harbored, transported, provided, obtained, advertised, maintained, patronized or solicited by any means; (4) knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud or any combination of such means will be used; (5) to cause the Plaintiff to engage in a commercial sex act".

As discussed below, the facts and allegations as pled in Plaintiff's Complaint fail to establish the requisite elements of a civil claim under the TVPA. In particular, the Complaint fails to sufficiently plead required elements 3, 4 and 5 as set forth above.

## A. Plaintiff's Complaint Fails to Allege that Defendant Enticed, Recruited, Harbored, Transported, Provided, Obtained, Advertised, Maintained, Patronized or Solicited Plaintiff

Plaintiff's Complaint fails to sufficiently plead one of the essential elements of a claim under the TVPA: that she was enticed, recruited, solicited etc. to engage in a commercial sex act.  In fact, nowhere in the Plaintiff's Complaint

does she allege that Was enticed, solicited, recruited, etc. her to engage in a commercial sex act. At best, Plaintiff alleges in conclusory terms that Was "convinced" her to allow him to travel with her.   No specific facts and/or statements attributable to Was are alleged to support this bare allegation.  As such, under <u>Twombly</u> and <u>Iqbal</u>, Plaintiff's pleading is insufficient to withstand this motion to dismiss.

To the extent that Plaintiff may argue that the allegations should be read liberally to infer that she was "enticed" to engage in a commercial sex act, the facts of this case do not support drawing such an inference. Courts have interpreted the term "enticed" consistent with the dictionary definition to mean "to attract artfully or adroitly or by arousing hope or desire," and "[to]attract or tempt by offering pleasure or advantage."  <u>Noble v. Weinstein</u>, 335 <u>F.Supp</u>.3d 504, 517 (S.D.N.Y. 2018)  Here, Plaintiff admits that she and Was were in an intimate romantic relationship at the time of the alleged incident.  See ¶12 and ¶13.  In fact, Plaintiff and Was were romantically involved beginning in January 2021.  See ¶13.  Moreover, Plaintiff admits that she was the one who was planning a trip to Aruba, not Was, and that Was merely proposed the idea that he travel with her.  See ¶31 and ¶32.  While Plaintiff alleges that Was "offered" to pay for an unspecified portion of the costs of the trip (a fact which, as discussed below, Was denies), there is no allegation that this "offer" to contribute to the cost or pay a portion of the costs in any way "enticed" Plaintiff.  This is because Plaintiff was already planning her trip.  Thus, the allegations set forth in the Complaint cannot

be reasonably and/or objectively read to include any statement or inference that Plaintiff was "enticed" to go to Aruba so as to satisfy this element of her TVPA claim.

Plaintiff's allegations are clearly distinguishable from the types of allegations that have been found to be sufficient in other TVPA cases where victims are "enticed" or "solicited" to engage in a commercial sex act by promises of career advancement such as in the series of cases against the former Hollywood producer, Harvey Weinstein. Noble, supra (335 F.Supp.3d 504) (Weinstein alleged to lure actress to his hotel room promising a lucrative film role and a modeling meeting and used force to cause her to engage in a sex act); Geiss v. Weinstein, 383 F.Supp.3d 156 (S.D.N.Y. 2019) (plaintiff actress alleged that Weinstein enticed her to engage in commercial sex acts using promises of career advancement); Huett v. Weinstein Co, LLC., 2018 U.S. Dist. LEXIS 223736 (C.D.Cal Nov. 5, 2018) (allegation that Weinstein used the ploy of a television role as a fraudulent means of obtaining sexual gratification from plaintiff); Canosa v. Ziff, 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019) (young producer alleged that Weinstein sexually abused and harassed her under the false pretense of conducting business meetings and promoting her career) See also, United States v. Flanders, 752 F.3d 1317 (11th Cir. 2014) (defendant enticed the victims to audition for a commercial, drugged them and filmed sex acts); Ardolf v. Weber, 332 F.R.D. 467 (S.D.N.Y. 2019) (influential fashion photographer enticed victims with test photoshoots and promises to use his power to further

their modelling careers in order to sexually molest them); Eckhart v. Fox News Network, LLC, 2021 U.S. Dist. LEXIS 171219 (Sept. 9, 2021) (defendant enticed the victim by promising to "get her in the room with some really powerful people"); Lawson v. Rubin, 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. April 29, 2018) (defendant fraudulently lured women to his apartment where he sexually assaulted them in exchange for "modelling payments"); Roberts v. eXp Realty, LLC, 2024 U.S. Dist. LEXIS 93537 (C.D.Cal. May 23, 2024) (plaintiff lured to attend industry conference under the guise of career advancement).  In the case at hand, however, Plaintiff was already planning a trip to Aruba when Was is alleged to have proposed the idea of accompanying her.  As such, any purported offer by Was to contribute towards the travel costs (a fact which he disputes) for a trip that Plaintiff had already started planning and where the parties are involved in an intimate romantic relationship cannot plausibly support the element of "enticement" as envisioned by the Legislature in drafting the TVPA.

### B. Plaintiff's Complaint Fails to Set Forth any Facts to Support the Allegation that Defendant Knew that he Would Use Fraud or Force to Engage in Sexual Acts

Another essential element of a TVPA claim is that the defendant enticed the plaintiff knowing that he would use fraud or force to commit a commercial sex act.  See Noble, supra (335 F.Supp. 3d. at 517-518) (citing United States v. Todd, 627 F.3d 329, 333-334 (9th Cir. 2010) (the TVPA "requires the pleader allege awareness, at the initial recruitment or enticement stage, that certain prohibited means will be employed to achieve a perverse end goal: a commercial sex act.")

As noted by the court in <u>Todd</u>, "[w]hat the statute means to describe, and does describe awkwardly, is a state of mind which the knower is familiar with a pattern of conduct." <u>Id</u>. at 334.

Here, however, Plaintiff's Material Facts portion of her Complaint merely alleges that "[u]pon information and belief, Defendant convinced Plaintiff to allow him to travel to Aruba with her in order to engage in sexual relations with Plaintiff." see ¶ 34. Thereafter, in Count I of the Complaint Plaintiff asserts, again in wholly conclusory terms, that "Defendant paid for Plaintiff's trip to Aruba knowing that he would use fraud, physical force and/or coercion to engage in sexual acts with Plaintiff." See ¶ 104. These bare and conclusory statements and, in the case of ¶34, factually unsupported statements, are clearly insufficient to satisfy the knowledge requirement and, in no way, allege that Was made false or fraudulent promises to convince Plaintiff to commit a sex act. Indeed, given the admission made in the Complaint that the the parties were in an intimate romantic relationship, no rational finding to support the required knowledge element of Plaintiff's cause of action (i.e., use of fraud, physical force and/or coercion to engage in sexual acts) can be established under the TVPA and made here.

## C. The Allegations Do Not Fall Within the Purview of a Commercial Sex Act

The TVPA defines "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 <u>U.S.C.</u> §

1591(e)(3).   Again, in a wholly conclusory manner, Plaintiff's Complaint merely proffers that "Plaintiff benefitted financially commercially".  See ¶ 106.  Stated somewhat differently -- and interpreting this allegation in a light most favorable to Plaintiff -- it appears that Plaintiff is alleging that Defendant's payment of the Aruba travel/trip expenses in this one instance is a "thing of value" which satisfies the commercial sex act requirement under the TVPA.

Against this backdrop, however, to accept Plaintiff's bare allegation as satisfying the commercial sex act element would require an expansion of  the contours of the TVPA way beyond that which was intended by the Legislature and as recognized by our courts. In enacting the TVPA, Congress declared its purpose to "combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims." Pub. L. No. 106-386, §102.  In passing the legislation, Congress noted that many of the persons trafficked are in the sex industry but further recognized that trafficking also involves forced labor and that "[t]traffickers lure women and girls into their network through false promises of decent working conditions at relatively good pay as nannies, maids, dancers, factory workers, restaurant workers, sales clerks, or models". Ibid.

While our courts have broadly interpreted the language of the TVPA, the cases are limited to the "traditional" sex trafficking types of cases i.e. forced prostitution or sexual slavery, and, more recently, the expanded cases involving

victims forced or defrauded into sexual activity under the guise of career advancement i.e., the Harvey Weinstein and/or #MeToo Movement cases.  There is nothing in the legislative history or current caselaw, however, to warrant extension of the TVPA to the facts of this case involving two persons in an ongoing intimate romantic relationship.  Such an expansion is not warranted under the existing caselaw.  To be clear, we are not saying that a consensual relationship cannot result in a nonconsensual sex act, but here application of the TVPA to the facts would extend potential liability far beyond the scope of the TVPA.   In fact, to accept Plaintiff's allegations of a "commercial sex act" under these facts would essentially result in a potential sex trafficking claim anytime a romantically involved couple travels across state lines or out of the country and one partner forces himself/herself on the other.   Such a result is obviously unwarranted here and the TVPA should not be interpreted to apply to the facts of this case.

### D. The Commercial Sex Act Element of the TVPA Is Not Satisfied as Defendant Did Not Pay for the Travel Costs for the Trip to Aruba

The sole support for the essential element of a "commercial sex act" ("thing of value") is Plaintiff's allegation that Was "offered and did pay for the majority, if not the entirety, of Plaintiff's travel expenses for their trip to Aruba." See ¶35. Plaintiff's Complaint does not state with any particularity what expenses purportedly were paid by Defendant.  This statement, however, is unsupportable as it was Plaintiff who arranged for and paid for the travel costs for the August

2022 trip to Aruba.  See ¶4 of the Was Declaration and Exhibit A attached thereto.

Attached as Exhibit A to the Was Declaration are copies of emails for the return

eTicket itinerary arranged by Plaintiff.  In his Declaration, Defendant states that

Plaintiff arranged for, purchased and paid for the airline tickets for the Aruba trip

forming the basis for Plaintiff's TVPA claim.  In addition, Plaintiff has not and

cannot allege that Defendant paid for the accommodations in Aruba as the Aruba

property where Plaintiff, Defendant and Plaintiff's minor son, who accompanied

them, stayed during the trip was owned by one or both of Plaintiff's parents.  See

¶7 of the Was Declaration.

     Defendant definitively certifies that he did not pay for the travel expenses

for the trip to Aruba.  Plaintiff, on the other hand, posits in vague, unspecific and

conclusory terms that Defendant paid for "the majority, if not the entirety of

Plaintiff's travel expenses" to satisfy the "commercial" component of the

essential element of commercial sex act.  Such ambiguous and imprecise

assertions are woefully insufficient to establish the critical commercial aspect of

the element of commercial sex act required to establish a sex trafficking claim

under the TVPA.

     Accordingly, based upon the foregoing, Counts I and II of Plaintiff's

Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to

state a claim.   Plaintiff has failed to meet her burden of pleading factual

allegations to support each element of a cause of action under 18 U.S.C. §1595

or N.J.S.A. 2C:13-8.1.

## POINT II

## THE COURT SHOULD DECLINE TO RETAIN JURISDICTION OVER THE STATE CLAIMS SET FORTH IN COUNTS III, IV AND V OF THE COMPLAINT

The sole basis for jurisdiction of this Court is Plaintiff's claim under 18 U.S.C. §1595. If dismissed, this court should decline to retain supplemental jurisdiction over the remaining state causes of action alleged in Counts III, IV and V of Plaintiff's Complaint.

28 U.S.C. § 1367 sets forth the basis for this Court's supplemental jurisdiction of state court claims as follows:

> (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

Subsection (c)(3) specifically authorizes the Court to decline supplemental jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction". It is within the Court's discretion whether to exercise supplemental jurisdiction over the state court claims. Hubbard v. Blue Cross & Blue Shield Ass'n, 42 F.3d 942 (5th Cir.), cert. Denied, 515 U.S. 1122, 115 S.Ct. 2276 (1995). Since primary responsibility for developing and applying state law

17

rests with state courts, district courts could ordinarily decline to exercise supplemental jurisdiction once federal claims are dismissed. <u>Montero v. AGCO Corp.</u>, 19 <u>F.Supp.</u> 2d 1143 (E.D. Cal. 1998).

In the event that this Court grants Defendant's motion to dismiss Counts I and II of the Complaint, the only remaining causes of action are for battery (Count III), assault (Count IV) and intentional infliction of emotional distress (Count V). These claims should be adjudicated in a New Jersey State Court as principles of New Jersey common law will govern.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Jeffrey Was respectfully requests that his motion to dismiss Count I and Count II of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) be granted and that the Court decline to exercise supplemental jurisdiction over the remaining state court causes of action asserted in Counts IIII, IV and V.

<div style="margin-left:40%">

Respectfully submitted,

SHAPIRO, CROLAND, REISER,
 APFEL & DI IORIO, LLP

By:  /s/ Stuart Reiser
    Stuart Reiser, Esq.
        And
    /s/ Valerie A. Vladyka
    Valerie A. Vladyka, Esq.
    Continental Plaza II
    411 Hackensack Avenue
    Hackensack, New Jersey 07601
    Tel:  (201) 488-3900
    Fax:  (201) 488-9481

    *Attorneys for Defendant,*
    *Jeffrey T. Was*

</div>

Dated:  July 15, 2024